UNITED STATES DISTRICT COURT
OF THE NORTHERN DISTRICT OF NEW YORK
=========================================
WILLIAM HENDRICKS

                Plaintiff

vs.

COUNTY OF ONEIDA
SCOTT McNAMARA, personally and as
DISTRICT ATTORNEY OF THE
COUNTY OF ONEIDA
                Defendants.
=========================================

**COMPLAINT**

Jury Trial Requested

Case No. 6:11-CV-0007 (GTS/ATB)

    Plaintiff, WILLIAM HENDRICKS, by and through his attorneys, BRINDISI, MURAD, BRINDISI, PEARLMAN, JULIAN & PERTZ, L.L.P., complains of the Defendants as follows:

## PARTIES

1. William Hendricks is at all times hereinafter mentioned a resident of the City of Utica, State of New York, and County of Oneida. He is African-American and the only African American serving in elected office in Oneida County Government.

2. The Defendant County of Oneida is a duly constituted County of the State of New York, established under the Constitution and the laws of said State.

3. The Defendant Scott McNamara is a resident of the County of Oneida and at all times set forth in this complaint, was the duly elected District Attorney of Oneida County.

## VENUE

4. This case is properly venued in the Northern District of New York based on the residence of the parties.

1

## JURISDICTION

5. Federal jurisdiction is conferred upon this Court pursuant to 28 U.S.C.A. §1331 and 28 U.S.C.A. §1343 because the matters in controversy arise under the Constitution and laws of the United States.

6. The Court's supplemental jurisdiction is invoked pursuant to 28 U.S.C.A. §1367(a) with regard to New York State claims.

7. On or about April 21, 2010, a Notice of Claim was served on the defendants, County of Oneida, and Scott McNamara, District Attorney of the County of Oneida. Copies of the Affidavits of Personal Service are attached hereto and made a part hereof as *"Exhibit 1"*.

8. This claim is being filed against the municipal defendants pursuant to sections 50-e and 50-i of the General Municipal Law of the State of New York.

9. This claim has not been paid, adjusted or denied; and is filed within one year and ninety (90) days after the claim accrued as required by law.

## PRELIMINARY STATEMENT

10. This is a civil rights action against the employees and officials of Oneida County, New York for depriving the Plaintiff of established constitutional, statutory, and common law rights.

11. The Plaintiff was wrongfully charged with a crime by the Defendants for exercising his constitutional right of free speech pursuant to the First Amendment of the United States Constitution.

12. The Defendants deprived the Plaintiff of federal and constitutional rights as set forth below.

13. The Defendants have deprived the Plaintiff of his First Amendment right of free speech secured by the Constitution and laws of the United States and have deprived the Plaintiff of that right by acting under color of law, to wit. by accusing the Plaintiff of violating Section 240.30 1(b) of the New York State Penal Law in three counts and by using the force and standing of the Public Office of District Attorney to accuse the Plaintiff of criminal behavior even though charges against him were dismissed to achieve a chilling of the Plaintiff's free speech and to suppress his right of speech regarding public affairs and political matters.

14. The Defendants have deprived the Plaintiff of his Fourteenth Amendment right to not be discriminated against because of his race and have deprived the Plaintiff of that right by accusing the Plaintiff of violating Section 240.30 1(b) of the New York State Penal law and by using the force and standing of the Public Office of District Attorney to accuse the Plaintiff of criminal behavior even though charges against him were dismissed to achieve a dulling of the Plaintiff's free speech and to suppress his right of speech regarding public affairs and political matters.

15. On 1/27/10 and 2/3/10, District Attorney Scott McNamara, after discussing the indictment, did state to WIBX Radio in words and substance that the Claimant had engaged in criminal activity stating:

> "That letter was done to harass Jerry Fiorini and to annoy
> Jerry Fiorini and the only way that letter becomes protected

specch if the people who wrote that letter believed it to be true.

When you start alleging that people are blackmailing people and when you start alleging that people are paying off people with taxpayers money and that's not true and you don't have a good ____ foundation to make that statement why did you publish the letter and the thing bothers me most about this letter is that if it wasn't done to harass then why did they take it to the media and not take it to the police?

Based upon the way this went down and the material that was presented to us that their intent was to harass Tanoury and Fiorini is the way it looks to me....."

## FACTS

16. William Hendricks had served as a member of the Oneida County Board of Legislators from approximately 1986 to 2006, having lost his bid for reelection in the 2007 election to Lawrence Tanoury, Jr.

17. The Oneida County Board of Legislators is, pursuant to State Law and the Oneida County Charter, the duly constituted governing body of the County of Oneida.

18. Pursuant to the County Charter and Administrative Code and the County Law of the State of New York, the Board of Legislators is elected every two years at the general election in the odd years, with county legislators standing for election in twenty-nine legislative districts.

19. Pursuant to said Charter code and laws there also exists the Office of the County Executive, elected every four years in odd years, said office is vested with administrative responsibility and budgetary duties, and has limited veto power over budget appropriations and veto power over local laws.

20. Pursuant to said Charter, Administrative Code, State Constitution and the statutory law of the State of New York, there exists the Office of Oneida County District Attorney elected by the voters of Oneida County, the District Attorney being charged with the duty to prosecute violations of the law.

21. In November 2009, the Plaintiff was elected by the citizens of the 25th Legislative District to the Oneida County Legislature, defeating the incumbent County Legislator, Lawrence Tanoury, Jr.

22. On November 4, 2009, the Plaintiff signed and caused to be delivered a letter, which is attached hereto and made a part hereof as *Exhibit "II"*. The Plaintiff alleges the contents of this letter as if fully set forth in this paragraph.

23. Pursuant to the Oneida County Charter and Administrative Code and the Rules of the Board of County Legislators, the Board prior to January 8 of each even numbered year is to meet and elect a Chair and other offices.

24. After said meeting pursuant to said rules, based on the number of seats won by a political party, the party with a majority shall elect a majority leader and the party with the next number of seats shall select a minority leader.

25. Traditionally the Chair is selected from the party with a majority of seats.

26. Traditionally the Chair is voted on by the majority party at an organizational caucus which occurs between the election and the first of the year, but ordinarily before Thanksgiving.

27. Having been an endorsed Republican candidate and having won the election, the Plaintiff was entitled to select and vote on both the Chair at the Republican caucus and vote again when the legislature organized on or before January 8, 2010.

28. The Plaintiff was both empowered to and obligated to select and vote on a Chair pursuant to the State Law, County Charter and Code, and the Rules of the Board of Legislators by January 8 of the even year.

29. Gerald Fiorini, on November 4, 2009, at the time the Plaintiff signed and circulated Exhibit "II" was the incumbent Chair of the Oneida County Board of Legislators.

30. Gerald Fiorini at the time the Plaintiff signed and circulated Exhibit "II" had expressed his intention to seek re-election as Chair in the new term of the County Legislature commencing on January 1, 2010.

31. The Plaintiff signed and circulated Exhibit "II" because it expresses his concerns as an incoming member of the Board of Legislators and as a citizen regarding Mr. Fiorini's re-election as Chair of the Legislature.

32. Said letters were delivered to Mr. Fiorini, members of the Board of Legislators, and the news media.

33. Upon information and belief, a meeting was convened pursuant to said letter between Mr. Fiorini, the Oneida County County Executive Anthony Picente, and other county employees.

34. Upon information and belief, the Defendant McNamara was consulted by said officials and asked to prosecute the Plaintiff.

35. Upon information and belief, the Defendant McNamara was contacted by Tanoury and asked to prosecute this matter.

36. Upon information and belief, rather than declining, the Defendant McNamara promised to act on the complaints.

37. Upon information and belief, rather than referring the matter to a police agency for investigation, the Defendant McNamara assigned investigators within the Oneida County District Attorney's Office to investigate this matter.

38. As a consequence of said letter, the Plaintiff was investigated by the County and the District Attorney's Office.

39. On or about November 5, 2009, the Plaintiff was contacted by an investigator of the District Attorney's office for the purpose of conducting an interview about said letter.

40. The Plaintiff declined to be interviewed.

41. On or about December 1, 2009, Joseph Saba wrote to the Plaintiff asserting that that Plaintiff had "steadfastly refused to make or give a statement about the matter involving Oneida County Legislature (sic) Gerald Fiorini".

42. Upon information and belief, on or about November 27, 2009, the Defendant McNamara advised the Utica newspapers that his office was investigating the matter and that the letter could be aggravated harassment.

7

43. Mr. Fiorini, the Chair of the Oneida County Board of Legislators, was quoted by Utica Daily Press on December 9, 2009 that "I'm very bitter about this thing".

44. On or about December 19, 2009, the Oneida County Grand Jury convened.

45. Thereafter a indictment was issued accusing the Plaintiff of the offense of aggravated harassment in the second degree violating 240.30 subd.1(b) of the Penal Law pursuant to three counts, a true copy of the indictment being attached hereto and made a part hereof as *Exhibit "A" of Exhibit I.*

46. Thereafter, the Plaintiff was served a Summons directing the Plaintiff to appear on January 4, 2010 at 9:00 a.m. in Oneida County Court for an arraignment before New York State Supreme Court Justice Michael Daley.

47. January 4, 2010 was the day that the Oneida County Legislature had previously scheduled for the aforementioned organizational meeting including the taking of the oath of office, and the election of the Chair of said body.

48. The Defendant McNamara notified the news media of the Plaintiff's appearance.

49. The Plaintiff appeared in Oneida County Court on January 4, 2010 before the Honorable Michael Daley and was arraigned along with co-defendant Robert Barry.

50. Plaintiff's counsel, upon the appearance, did present the Court and the District Attorneys' office with the attached Memorandum of Law, *Exhibit "III".*

51. The Plaintiff thereafter, on that same day, presented in the Chambers of the Oneida County Board of Legislators and took the oath of office voting in the election of a Chair, among other positions.

52. The Plaintiff voted against Mr. Fiorini, who was the only candidate for Chair.

8

53. Thereafter, after the passage of several weeks, the Plaintiff was advised by his attorney that the District Attorney's office had offered an adjournment in contemplation of dismissal, which the Plaintiff declined.

54. On January 19, 2010, the District Attorney's office filed with the Court a reply Memorandum of Law, a true copy of which is attached hereto and made a part hereof as *Exhibit "IV"*.

55. On January 19, 2011, the date set by Justice Daley for a further conference, the District Attorney's Office moved to dismiss the indictment in its entirety with prejudice as and against the Plaintiff and Robert Barry.

56. Thereafter on January 27, 2010 and February 3, 2010, the Defendant McNamara did personally appear on WIBX radio station and stated the following:

> "That letter was done to harass Jerry Fiorini and to annoy Jerry Fiorini and the only way that letter becomes protected speech if the people who wrote that letter believed it to be true.
>
> When you start alleging that people are blackmailing people and when you start alleging that people are paying off people with taxpayers money and that's not true and you don't have a good ____ foundation to make that statement why did you publish the letter and the thing bothers me most about this letter is that if it wasn't done to

9

> harass then why did they take it to the media and not take it to the police?
>
> Based upon the way this went down and the material that was presented to us that their intent was to harass Tanoury and Fiorini is the way it looks to me....."

## AS AND FOR A FIRST CAUSE OF ACTION

### LIBEL

57. The aforementioned statement by the Defendant McNamara was libelous, defamatory, actionable, wrong, and inaccurate in that it accused the Plaintiff of a crime and of illegal, immoral, and wrongful activity notwithstanding the prior dismissal of the case against the Plaintiff.

58. The Defendant McNamara was not acting in his official capacity as District Attorney when he uttered the libelous statements.

59. That said statement as set forth herein constitutes libel since they were words having a tendency to harm Plaintiff and they are actionable per se.

60. A reasonable prudent person would or should anticipate that damage to another, and, in particular, the Plaintiff herein, will naturally flow from the statements as set forth above.

61. That by reasons of the aforementioned statements, the Plaintiff has been suffered great loss and damage in that he has been injured in his good name, fame, credibility, reputation, and has been held up to ridicule and contempt by his friends, acquaintances, peers

and the public and has suffered loss of prestige and standing in his community, and elsewhere, all to his damages.

62. That at the time of the utterance or publication of this defamatory material, the Defendant was motivated by actual malice and knew that the statements were false and untrue, or that such statements were made with reckless and wanton disregard for the truth.

63. That the defamatory statements made pertaining to the Plaintiff were knowingly false and wanton and made with malice in such a way to purposely disgrace and discredit the Plaintiff.

64. That such acts were done by the Defendant with malice and in a reckless manner causing severe mental anguish and distress to the Plaintiff and in such a manner as to show an utter disregard of the consequences that might follow.

65. That all of the aforementioned acts were willful, wanton, malicious, intentional and deliberate.

66. The Defendant McNamara uttered these statements with the knowledge and intent that they would be published to a large number of people.

67. Said statements in fact were published multiple times by said radio station to thousands of listeners.

68. The aforementioned statements did cause harm to the Plaintiff causing injury to Plaintiff's good name and reputation and causing the Plaintiff harm in both his public and private capacity and caused the Plaintiff emotional and physical distress and to be subjected to ridicule and to be ostracized among the public and family.

69. The Plaintiff seeks damages for the harm done to his good name and reputation and punitive damages for harm caused by the Defendants to the Plaintiff.

## AS AND FOR A SECOND CAUSE OF ACTION

### SLANDER

70. The aforementioned statement by the Defendant McNamara was slanderous, defamatory, actionable, wrong, and inaccurate in that it accused the Plaintiff of a crime and of illegal, immoral, and wrongful activity notwithstanding the prior dismissal of the case against the Plaintiff.

71. The Plaintiff McNamara was not acting in his official capacity as District Attorney when he uttered the slanderous statements.

72. Said statements, in fact, were published multiple times by said radio station to thousands of listeners.

73. That said statement as set forth herein constitutes slander since they were words having a tendency to harm Plaintiff and they are actionable per se.

74. A reasonable prudent person would or should anticipate that damage to another, and, in particular, the Plaintiff herein, will naturally flow from the statements as set forth above.

75. That by reasons of the aforementioned statements, the Plaintiff has been suffered great loss and damage in that he has been injured in his good name, fame, credibility, reputation, and has been held up to ridicule and contempt by his friends, acquaintances, peers and the public and has suffered loss of prestige and standing in his community, and elsewhere, all to his damages.

76. That at the time of the utterance or publication of this defamatory material, the Defendant was motivated by actual malice and knew that the statements were false and untrue, or that such statements were made with reckless and wanton disregard for the truth.

77. That the defamatory statements made pertaining to the Plaintiff were knowingly false and wanton and made with malice in such a way to purposely disgrace and discredit the Plaintiff.

78. That such acts were done by the Defendant with malice and in a reckless manner causing severe mental anguish and distress to the Plaintiff and in such a manner as to show an utter disregard of the consequences that might follow.

79. That all of the aforementioned acts were willful, wanton, malicious, intentional and deliberate.

80. The aforementioned statements did cause harm to the Plaintiff causing injury to Plaintiff's good name and reputation and causing the Plaintiff harm in both his public and private capacity and caused the Plaintiff emotional and physical distress and to be subjected to ridicule and to be ostracized among the public and family.

81. The Plaintiff seeks damages for the harm done to his good name and reputation and punitive damages for harm caused by the Defendants to the Plaintiff.

## AS AND FOR A THIRD CAUSE OF ACTION
## ARTICLE XIV OF THE U.S. CONSTITUTION, EQUAL PROTECTION ON THE BASIS OF RACE 42 U.S.C.A. §1981

82. The above actions and conduct by the Defendants violated the right of the Plaintiff not to be deprived of equal protection of the laws on the basis of race under the Fourteenth Amendment to the United States Constitution. (Art. XIV, U.S. Constitution)

83. Upon information and belief, the Plaintiff is the only County Legislator in the history of Oneida County to be charged with a crime based on a letter authored pursuant to his duties as an elected official thereby depriving the Plaintiff of his right to the full and equal benefit of all laws including but not limited to the rights and benefits bestowed by the First Amendment of the United States Constitution and the rights and privileges of office as a member elect of the Oneida County Legislature and as a member of said body.

84. Plaintiff requests that the Court award compensatory and punitive damages against the Defendants in an amount to be determined according to the proof by the Plaintiff in their individual capacities.

## *AS AND FOR A FOURTH CAUSE OF ACTION*
## *ARTICLE I U.S. CONSTITUTION, 42 U.S.C.A.§1983*

85. The above-described conduct by the Defendants violated Plaintiff's right to freedom of speech under the First Amendment of the U.S. Constitution Art. I, by censoring and chilling Plaintiff's speech and deterring him from exercising his constitutional rights pursuant to the First Amendment of the U.S. Constitution.

86. The Defendants misused the penal law of the State of New York and the force, power and effect of their office(s) to wrongfully deprive the Plaintiff of rights, privileges, and immunities secured by the U.S. Constitution, the laws of the State of New York including the Public Officers, the County law, the General Municipal law and the State Constitution, as well as the ordinances of Oneida County and the rules of its legislature.

87. The Plaintiff requests that the Court award compensatory and punitive damages in an amount to be determined according to proof by the Plaintiff against all Defendants in their individual capacities.

## AS AND FOR A FIFTH CAUSE OF ACTION
## ARTICLE I U.S. CONSTITUTION
## FREEDOM OF SPEECH, 42 U.S.C.A. §1983

88. The above described conduct by the Defendants violated the right of the Plaintiff to be free from retaliating treatment based upon the exercise of his freedom of speech under the First Amendment to the U.S. Constitution (Art. I, U.S. Constitution)

89. The Plaintiff requests that the Court issue an injunction ordering that the Plaintiff restored his appropriate committee assignments and that the Court award compensatory and punitive damages in an amount to be determined according to proof by Plaintiff against all Defendants in their individual capacity.

## AS AND FOR A SIXTH CAUSE OF ACTION
## INTENTIONAL INFLICTION OF MENTAL DISTRESS

90. The Defendants engaged in these actions and activities to intentionally inflict mental and physical harm and distress upon the Plaintiff.

91. The Plaintiff did suffer mental and physical harm as caused by the Defendants' joint and several actions.

## AS AND FOR A SEVENTH CAUSE OF ACTION
## NEGLIGENT INFLICTION OF MENTAL DISTRESS

92. The Defendants engaged in these actions and activities to negligently inflict mental and physical harm and distress upon the Plaintiff.

93. The Plaintiff did suffer mental and physical harm as caused by the Defendants' joint and several actions.

## AS AND FOR A EIGHTH CAUSE OF ACTION
## ARTICLE I, SECTION 8 AND 11 OF THE NEW YORK STATE CONSTITUTION

94. The Plaintiff is entitled to the protections of Section 8 of Article I of the New York State Constitution (which guarantees due process, equal protection and civil rights) and Section 11 of Article I of the New York State Constitution (which guarantees freedom of speech).

95. Defendants' aforesaid acts interfered with and/or deprived the Plaintiff of his New York State Constitutional rights and guarantees by seeking to punish Plaintiff for exercising his right to free speech, and by denying him equal protection of State laws and due process.

96. As a direct and proximate result of Defendants' aforesaid acts, Plaintiff has suffered damages as set forth more particularly in this complaint.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

1) Accord the Plaintiff a jury trial on the appropriate causes of action;

2) Issue an injunction ordering the Defendant County of Oneida cease and desist from discriminating against the Plaintiff;

2) Award compensatory damage in an amount to be determined according to proof by the Plaintiff against all Defendants in their individual capacity;

3) Award punitive damages in such other amount as the jury may determine is sufficient to punish them for and deter others from committing the constitutional violations alleged in the Complaint;

4) Award the Plaintiff his costs, expense and reasonable attorney fees pursuant to, inter alia, 42 U.S.C.A.§1988 and other federal and state laws, and

5) Grant such other and further relief as to the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rules of Civil Procedure, Rule 28(b), Plaintiff demands trial by jury for all of the issues pled so triable.

Dated:

Yours, etc.

BRINDISI, MURAD, BRINDISI, PEARLMAN,
JULIAN & PERTZ, LLP
Robert F. Julian
Bar Roll No.: 601157
Attorneys for Plaintiff
2713 Genesee Street
Utica, New York 13501
(315) 733-2396