UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

WILLIAM HENDRICKS,

                              Plaintiff,

v.                                                    6:11-CV-0007
                                                      (GTS/ATB)
COUNTY OF ONEIDA and SCOTT McNAMARA,
personally and as District Attorney of the County of
Oneida,

                              Defendants.
_____

APPEARANCES:                                          OF COUNSEL:

ROBERT F. JULIAN, P.C.                                ROBERT F. JULIAN, ESQ.
   Counsel for Plaintiff
2037 Genesee Street
Utica, New York 13501

DELBUONO & DIODATI                                    DAVID R. DIODATI, ESQ.
   Counsel for County of Oneida
23 Genesee Street
New Hartford, New York 13413

KERNAN PROFESSIONAL GROUP, LLP                        DAVID A. BAGLEY, ESQ.
  Counsel for Scott McNamara
1310 Utica Street
Oriskany, New York 13424

HON. GLENN T. SUDDABY, United States District Judge

## MEMORANDUM-DECISION and ORDER

Currently before the Court, in this civil rights action filed by plaintiff, William Hendricks

("Hendricks") are separate motions for summary judgment by defendants, County of Oneida ("the

County") and Scott McNamara ("McNamara").  *See* Dkt. Nos. 22, 23.  For the reasons set forth

below, both motions are granted.

## I.    RELEVANT BACKGROUND

### A.    Plaintiff's Amended Complaint

Generally, Plaintiff's Amended Complaint asserts nine causes of action stemming from Plaintiff's prosecution for aggravated harassment in the second degree regarding a letter he "signed and delivered" to members of the Board of Legislators of the County as well as various news media outlets.  (*See generally* Dkt. No. 11 [Pls.' Am. Compl.].)

More specifically, Plaintiff's Amended Complaint alleges claims of: (1) libel; (2) slander; (3) violation of his rights to equal protection pursuant to 42 U.S.C. § 1981; (4) violation of his First Amendment right to freedom of speech pursuant to 42 U.S.C. § 1983; (5) First Amendment retaliation pursuant to § 1983; (6) intentional infliction of emotional distress; (7) negligent infliction of emotional distress; (8) violation of his right to freedom of speech under Article I, Section 8 of the New York State Constitution; and (9) violation of his right to equal protection and freedom from discrimination in civil rights under Article I, Section 11 of the New York State Constitution.  (*Id.*)

### B.    Recitation of Undisputed Facts

The following material facts[1] have been asserted and supported by one or both Defendants in their Local Rule 7.1 Statements of Undisputed Material Facts, and unopposed by Plaintiff.  (*See* Dkt. No. 22-8 [Def. McNamara's Unopposed Rule 7.1 Statement]; Dkt. No. 23-1 [Def. County's Unopposed Rule 7.1 Statement].)  Local Rule 7.1(a)(3) of the Local Rules of Practice for this Court requires that the nonmoving party file a response to the moving party's Statement of Material Facts,

---

[1]    Conclusions of law in a Local Rule 7.1 Statement, even where unopposed, are not deemed admitted.  *See Johnson v. Enu*, No. 08-CV-158, 2011 WL 3439179, at *1 (N.D.N.Y. July 13, 2011) (Homer, M.J.), *adopted in its entirety by*, 2011 WL 3439524 (N.D.N.Y. Aug. 5, 2011) (Scullin, J.).

which admits or denies each of the moving party's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises. N.D.N.Y. L. R. 7.1(a)(3). It further provides that, to the extent that the nonmoving party fails to do so, the facts asserted in the movant's Statement of Material Facts will be deemed admitted, as long as they are supported by the record. *Id.* Here, Plaintiff, who is represented by counsel, has failed to submit a response to either of the Defendants' Statement of Material Facts. Accordingly, where supported by admissible record evidence, the Court deems the following facts admitted.

Plaintiff was an Oneida County legislator who was re-elected in November 2009 after having been defeated for one term, and resumed office commencing January 4, 2010. Defendant McNamara is and was at all relevant times the District Attorney of Oneida County. Defendant County is a municipal organization organized and existing pursuant to the laws of the State of New York.

On or about November 4, 2009, Plaintiff signed a letter addressed to Gerald Fiorini, Chairman of the Oneida County Board of Legislators, which questioned the integrity of Mr. Fiorini, requested his resignation, and made statements concerning Plaintiff's opponent in the recently completed election, Larry Tanoury ("the Letter"). Specifically, the Letter contained allegations concerning an extramarital affair and the use of taxpayer funds to pay blackmail. The Letter was distributed to local news media outlets and to members of the Oneida County Board of Legislators. Also on or about November 4, 2009, Fiorini met with McNamara and stated that the allegations in the Letter were false, that he considered the dissemination of the Letter wrongful, and that he wanted something done. McNamara told Fiorini he would look into the matter. The next day, McNamara

received an email from Tanoury, wherein Tanoury complained about the Letter and asked that McNamara consider the pursuit of criminal charges. McNamara responded that his office would open an investigation.

Thereafter, McNamara assigned to Assistant District Attorney Joseph Saba the task of determining what actions should be taken regarding the circumstances of the Letter, including possible submission of the matter to the grand jury. Oneida County District Attorney's Office Investigator James Helmer was assigned the task of investigating the preparation and dissemination of the Letter and related factual circumstances. Helmer conducted an investigation regarding the Letter, which included interviewing Fiorini and Tanoury and attempting without success to interview Plaintiff. Neither McNamara not Saba directed or participated in the investigation, except by way of receiving reports from Helmer concerning the status and results thereof.

Saba reviewed Helmer's reports, interviewed witnesses and presented the factual circumstances to a grand jury. The grand jury returned an indictment of Plaintiff, charging him with violations of the New York Penal Law, § 240.30, Aggravated Harassment in the Second Degree. Saba prepared the written Indictment of Plaintiff and McNamara signed it.

Saba handled the prosecution of Plaintiff, including, among other things, dealing with defense counsel, preparing written submissions, and preparing for trial. During the course of the prosecution of Plaintiff, Saba and McNamara discussed the case on a number of occasions.

During January 2010, McNamara became aware that Tanoury had posted a message on his blog sharing, among other things, his view that the Letter constituted protected expression under the First Amendment and his mixed feelings about the prosecution of Berry. Soon thereafter, Fiorini informed McNamara that he did not want to be involved further in the prosecution of Plaintiff.

McNamara discussed with Saba the communications from Tanoury and Fiorini. McNamara and Saba decided to suggest disposition of the prosecution by adjournment in contemplation of dismissal ("ACD"). Saba's offer of an ACD was rejected by Plaintiff's defense counsel. After discussing the matter further, McNamara directed Saba to dismiss the prosecution of Plaintiff. On or about January 25, 2010, Saba appeared in court and moved to dismissed the Indictment against Plaintiff.[2]

Sometime in late January 2010 or early February 2010, McNamara made on-air statements at a local radio station, WIBX, concerning the prosecution of Plaintiff. Those statements include the following:

> I think most people would agree that the letter was done to harass Jerry Fiorini and to annoy Jerry Fiorini and the only way that [] letter then becomes protected speech is that if the people who wrote it believed it to be true. ...
>
> Now had this letter only alleged, and I think that's what [Judge] Dal[e]y was talking about, the whole issue with the dollar lease and all that other stuff, that's fair game and that is open for public debate, but when you start alleging people are blackmailing people and start alleging people are paying off blackmail with taxpayer's money and that's not true, and you don't have a good faith foundation to make that statement, why did you do that? And the thing that bothers me the most about this letter if it wasn't done for the purpose of annoying somebody, then why did they take it to the media and not take it to the police? ...

---

[2]     Although each Defendant's Rule 7.1 Statement asserts that the Indictment was dismissed "on or about January 25, 2011," it is clear from the record that the dismissal actually happened in late January 2010, not 2011. First, McNamara's affidavit, upon which both Defendants rely, includes statements regarding events leading directly to the dismissal and events occurring directly thereafter, which occurred in January of 2010. (*See* Dkt. No. 22-4, at ¶¶ 16-23 [Aff. of Scott D. McNamara, Mar. 19, 2010].) Moreover, in McNamara's Answer to the Amended Complaint he admits Plaintiff's allegation in Paragraph 56 of the Amended Complaint that the Indictment was dismissed, but denies that it happened in January 2011, and asserts that instead, the Indictment was dismissed in January 2010. (*See* Dkt. No. 11, at ¶ 56 [Pl.'s Am. Compl.]; Dkt. No. 14, at ¶ 22 [Def. McNamara's Ans. to Pl.'s Am. Compl.].)

> Based upon the way this went down, and the information we had available to us, there [was intent] to harass Tanoury and Fiorini. Clearly the way it looks to me, but obviously I don't think we can prove that if we went forward especially based on Larry [Tanoury] changing his position.

(Dkt. No. 11-5 [Ex. 5 to Am. Compl.].) (*See also* Dkt. No. 22-8, at ¶ 25 [Def. McNamara's Rule 7.1 Statement.])

###    C.    Parties' Arguments on Defendants' Motions for Summary Judgment

####        1.    Defendant McNamara's Motion for Summary Judgment

Generally, in his memorandum of law, McNamara asserts the following arguments: (1) Plaintiff's federal claims fail as a matter of law because (a) McNamara is absolutely immune under the doctrine of prosecutorial immunity, (b) the grand jury indictment precludes a finding of wrongful prosecution, and (c) claims for defamation are not cognizable as a "stigma plus" claim under the Fourteenth Amendment; and (2) Plaintiff's state law claims fail because (a) there are no cognizable federal causes of action and therefore, this Court should dismiss the state law claims for lack of supplemental jurisdiction, (b) the defamation claims are barred by privilege because (i) Plaintiff was both a public figure and a public official at the time the alleged defamatory statements were made; (ii) the alleged defamatory statements were statements of opinion; (iii) the alleged defamatory statements were in the discharge of a public legal or moral duty; and (iv) the alleged defamatory statements were made regarding a matter of public concern, (c) Plaintiff's New York Constitutional claims should be dismissed for the same reasons asserted regarding Plaintiff's federal Constitutional claims, and (d) Plaintiff's emotional distress claims are barred by prosecutorial immunity and because Plaintiff has failed to adduce evidence of extreme or outrageous conduct. (*See generally* Dkt. No. 22-9, at 6-20 [Def. McNamara's Mem. of Law].)

### 2. Defendant County's Motion for Summary Judgment

Generally, in its memorandum of law, the County argues that (1) Plaintiff's federal claims against it must be dismissed because (a) there is no evidence that it had a policy or custom pursuant to which Plaintiff's constitutional rights were violated and (b) a District Attorney in New York State prosecuting a criminal matter represents the State, not the County; and (2) Plaintiff's emotional distress claims against it must be dismissed because there is no evidence of conduct on behalf of the County that would support those claims. (*See generally* Dkt. No. 23-3, at 4-5 [Def. County's Mem. of Law].)

### 3. Plaintiff's Opposition to Defendants' Motions

Generally, in his brief in opposition to Defendants' motions for summary judgment, Plaintiff asserts the following arguments: (1) McNamara is not entitled to absolute prosecutorial immunity from the claims asserted by Plaintiff because McNamara's acts underlying those claims were not prosecutorial in nature; (2) McNamara is not entitled to qualified immunity because he violated Plaintiff's First Amendment rights and should have known he was doing so; and (3) Defendants are liable on Plaintiff's emotional distress claims because the actions of McNamara and Helmer provoked extreme emotional distress. (*See generally* Dkt. No. 27, at 9-25 [Pl.'s Br.].)

### 4. Defendant McNamara's Reply to Plaintiff's Opposition

Generally, in his memorandum of law in reply to Plaintiff's opposition brief, McNamara argues that (1) he is entitled to absolute prosecutorial immunity for his conduct in initiating a prosecution against Plaintiff; (2) even if McNamara is not entitled to absolute immunity, he is entitled to qualified immunity because his actions were objectively reasonable; and (3) Plaintiff's defamation claim fails because McNamara's statements were privileged. (*See generally* Dkt. No. 30, at 3-8 [Def. McNamara's Reply Mem. of Law].)

## II.    GOVERNING LEGAL STANDARDS

### A.    Standard Governing a Motion for Summary Judgment

A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In determining whether a genuine dispute as to a material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party.  *See Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir.2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598 (1970)).  In addition, "[the moving party] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the ... [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24, 106 S. Ct. 2548 (1986).  However, when the moving party has met this initial responsibility, the nonmoving party must identify evidence in the record that creates a genuine issue of material fact.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348 (1986)).

As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248, 106 S. Ct. 2505 (1986).  "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248 (citation omitted).

As for the genuineness requirement, a dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the novmoving party." *Id.*  As a result, "[c]onclusory allegations, conjecture and speculation ... are insufficient to create a genuine issue of

fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir.1998) (citation omitted; emphasis added).[3]

Similarly, inadmissible hearsay is insufficient to create a genuine issue of fact, "absent a showing

that admissible evidence will be available at trial." *Burlington Coat Factory Warehouse Corp. v.*

*Esprit De Corp.*, 769 F.2d 919, 924 (2d Cir.1985) (citations omitted).

### B. Legal Standard Governing Unopposed Motions

In this District, when a non-movant fails to oppose a legal argument asserted by a movant in

support of a motion, the movant's burden with regard to that argument has been lightened such that,

in order to succeed on that argument, the movant need only show that the argument possesses facial

merit, which has appropriately been characterized as a "modest" burden. *See* N.D.N.Y. L.R. 7.1(b)

(3) ("Where a properly filed motion is unopposed and the Court determines that the moving party

has met its burden to demonstrate entitlement to the relief requested therein...."); *Rusyniak v.*

*Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n. 1 (N.D.N.Y. Oct.30, 2009) (Suddaby, J.)

(collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL 2473509, at *2 & n. 3 (N.D.N.Y.

Aug.7, 2009) (Suddaby, J.) (collecting cases).

### C. Standards Governing Plaintiff's Claims

#### 1. Federal Causes of Action

##### a. 42 U.S.C. § 1983

In order to state a claim pursuant to 42 U.S.C. § 1983, a plaintiff must allege "(1) that some

person has deprived him of a federal right, and (2) that the person who has deprived him of that right

acted under color of state ... law." *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005) (quoting *Gomez v.*

---

[3]       As the Supreme Court has famously explained, "[the nonmoving party] must do
more than simply show that there is some metaphysical doubt as to the material facts."
*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86, 106 S. Ct. 1348
(1986) (citations omitted).

*Toledo*, 446 U.S. 635, 640, 100 S. Ct. 1920 (1980) (internal quotations omitted)). "Section 1983 is not itself a source of substantive rights[,] but merely provides a method for vindicating federal rights elsewhere conferred[.]" *Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004) (quoting *Baker v. McCollan*, 443 U.S. 137, 144, n.3, 99 S. Ct. 2689 (1979)).

"[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Kregler v. City of New York*, 821 F. Supp. 2d 651, 655-656 (S.D.N.Y. 2011) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir.1994) (internal quotation marks omitted)). The Second Circuit has previously held that a plaintiff may establish the personal involvement of a supervisor by showing that the supervisor (1) participated directly in the alleged constitutional violation, (2) failed to remedy the wrong after being informed of the violation through a report or appeal, (3) created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) exhibited deliberate indifference ... by failing to act on information indicating that unconstitutional acts were occurring. *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir.1995).[4]

---

[4]     More recently, the Supreme Court has held that "[b]ecause vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S. Ct. 1937 (2009). "In so holding, the Court explicitly rejected the argument that 'a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution." *Reynolds v. Barrett*, 685 F.3d 193, 206, n.14 (2d Cir.  2012) (quoting *Iqbal*, 556 U.S. at  677, 129 S. Ct. 1937). Thus, the Court found, "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Reynolds*, 685 F.3d at 206, n.14 (quoting *Iqbal*, 556 U.S. at  677, 129 S. Ct. 1937). Although the Second Circuit has not decided the viability of the *Colon* factors in light of *Iqbal*, it has expressed "considerable skepticism on that question." *Id.* Because the outcome of this case is the same under either *Colon* or *Iqbal*, the question need not be addressed at this time.

A municipality may only be liable on a § 1983 claim "if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91, 98 S. Ct. 2018 (1978)). In the absence of such a custom or policy, a municipality may not be held liable on a § 1983 claim for the actions of its employees under a theory of vicarious liability. *See Jones*, 691 F.3d at 80 (citing *Monell*, 436 U.S. at 691, 98 S. Ct. 2018). Thus, isolated acts of municipal employees are typically not sufficient to establish municipal liability. However, acts done "pursuant to municipal policy, or [that] were sufficiently widespread and persistent to support a finding that they constituted a custom, policy, or usage of which supervisory authorities must have been aware" would justify liability of the municipality. *Jones*, 691 F.3d at 81. Further, "a municipal custom, policy, or usage would be inferred from evidence of deliberate indifference of supervisory officials to such abuses." *Id.*

### i.     Freedom of Speech

In order to establish a § 1983 claim for a violation of one's right to free speech, a plaintiff must prove that official conduct actually deprived him of that right. In order to prove this deprivation, a plaintiff must come forward with evidence showing either that (1) defendants silenced him or (2) "defendant[s'] actions had some actual, non-speculative chilling effect" on his speech. *Williams v. Town of Greenburgh*, 535 F.3d 71, 78 (2d Cir. 2008) (quoting *Colombo v. O'Connell*, 310 F.3d 115, 117 (2d Cir.2002)).

### ii.     First Amendment Retaliation

In order to establish a claim for retaliation under the First Amendment, a plaintiff must prove (1) his conduct was protected by the First Amendment, (2) defendants' actions were motivated or substantially caused by the exercise of that right, and (3) defendants' actions effectively "chilled"

the exercise of plaintiff's First Amendment right.  *See Dillon v. Morano*, 497 F.3d 247, 251 (2d Cir.2007), *Curley v. Village of Suffern*, 268 F.2d 65 (2d Cir.2001).

### b.  42 U.S.C. § 1981(a)

Section 1981 is intended to ensure that "[a]ll persons within the jurisdiction of the United States shall have the same right ... to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens ...." 42 U.S.C. § 1981(a).  In order to establish a claim under § 1981, a plaintiff must prove (1) that he is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute.  *See Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir.1993).  "Those enumerated activities include the rights 'to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property.'" *Brown v. City of Oneonta*, 221 F.3d 329, 339 (2d Cir. 2000) (quoting § 1981(a)), *overruled in part on other grounds by*, *Gonzaga Univ. v. Doe*, 536 U.S. 273, 122 S. Ct. 2268 (2002).

Claims against a municipality under Section 1981, similar to claims against a municipality under Section 1983, cannot be premised on a theory of vicarious liability, but must instead be based on the existence of a policy or custom, pursuant to which the plaintiff's constitutional rights were violated, as is required under *Monell v. New York City Department of Social Services*.  *See Gertskis v. E.E.O.C.*, No. 11-CV-5830, 2013 WL 1148924, at *10 (S.D.N.Y. Mar. 20, 2013) (citing *Monell*, 436 U.S. at 690-95 (1978).

### 2.     New York State Claims

#### a.     Common Law Claims

##### i.     Defamation

"Defamation is injury to a person's reputation, either by written expression (libel) or oral expression (slander)." *Lesesne v. Brimecome*, — F. Supp. 2d —, —, 2013 WL 154299, at *2 (S.D.N.Y. 2013) (citing *Krepps v. Reiner*, 588 F. Supp. 2d 471, 483 (S.D.N.Y.2008)).

To establish a defamation claim in New York, a plaintiff must prove (1) a defamatory factual statement concerning the plaintiff; (2) publication to a third party; (3) fault, established by demonstrating either negligence or malice depending on the libeled party's status; (4) falsity of the defamatory statement; and (5) special damages or per se actionability. *See Chau v. Lewis*, No. 11-CV-1333, 2013 WL 1296374, at *5 (S.D.N.Y. Mar. 29, 2013) (citing *Celle v. Filipino Reporter Enters.*, 209 F.3d 163, 176 (2d Cir.2000)). Where plaintiff is a public figure, he must prove that the defendant acted with constitutional malice. However, where plaintiff is a private figure, he must show that Defendants acted in a grossly irresponsible manner. *See New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S. Ct. 710 (1964); *Gertz v. Robert Welch, Inc*., 418 U.S. 323, 94 S. Ct. 2997 (1974); *Chapadeau v. Utica Observer-Dispatch, Inc.*, 341 N.E.2d 569, 38 N.Y.2d 196, 379 N.Y.S.2d 61 (N.Y. 1975).

Under New York law, "statements of pure opinion are not actionable as defamation." *Lan Sang v. Ming Hai*, — F. Supp. 2d —, —, 2013 WL 3215458, at *5 (S.D.N.Y. 2013) (quoting *Qureshi v. St. Barnabas Hosp. Ctr.*, 430 F. Supp. 2d 279, 288 (S.D.N.Y. 2006)) (citing *Gross v. New York Times Co.*, 623 N.E.2d 1163, 82 N.Y.2d 146, 151, 603 N.Y.S.2d 813 (N.Y.1993))). *See also Mann v. Abel*,  885 N.E.2d 884, 10 N.Y.3d 271, 276, 856 N.Y.S.2d 31 (N.Y. 2008) ("Expressions of

opinion, as opposed to assertions of fact, are deemed privileged and, no matter how offensive, cannot be the subject of an action for defamation."). "Whether a statement is one of fact or opinion is a question of law for the court." *Biro v. Conde Nast*, 883 F. Supp. 2d 441, 460 (S.D.N.Y. 2012) (quoting *Mann*, 885 N.E.2d at 885, 10 N.Y.3d 271, 856 N.Y.S.2d 31). In New York, courts evaluate three factors to make this determination:

> (1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal readers or listeners that what is being read or heard is likely to be opinion, not fact.

*Qureshi*, 430 F. Supp. 2d at 288 (citing *Gross*, 623 N.E.2d 1167, 82 N.Y.2d at 153, 603 N.Y.S.2d at 817).

### ii. Intentional Infliction of Emotional Distress

The elements of a claim for intentional infliction of emotional distress under New York common law are (1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress. *See Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir.1999) (citing *Howell v. New York Post Co.*, 612 N.E.2d 699, 81 N.Y.2d 115, 121, 596 N.Y.S.2d 350 (N.Y. 1993)). "Whether the conduct alleged may reasonably be regarded as so extreme and outrageous as to permit recovery is a matter for the court to determine in the first instance." *Stuto*, 164 F.3d at 827 (citing *Howell*, 612 N.E.2d 699, 81 N.Y.2d at 121, 596 N.Y.S.2d 350). Only where the alleged conduct "has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society" will a court allow a claim for intentional infliction of emotion distress to go forward. *Id.*, at 827 (quoting *Howell*, 612 N.E.2d 699, 81 N.Y.2d at 122, 596 N.Y.S.2d 350).

### iii. Negligent Infliction of Emotional Distress

Under New York law, a plaintiff may establish a claim for negligent infliction of emotional distress under one of two theories: (1) the bystander theory; or (2) the direct duty theory, both of which require a threat or danger of physical harm. *See Mortise v. United States*, 102 F.3d 693, 696 (2d Cir.1996). Under the bystander theory, a plaintiff may recover when "(1) she is threatened with physical harm as a result of defendant's negligence; and (2) consequently she suffers emotional injury from witnessing the death or serious bodily injury of a member of her immediate family." *Mortise*, 102 F.3d at 696 (citing *Bovsun v. Sanperi*, 461 N.E.2d 843, 61 N.Y.2d 219, 230-31, 473 N.Y.S.2d 357 (N.Y. 1984)). A plaintiff may recover under a direct duty theory when "she suffers an emotional injury from defendant's breach of a duty which unreasonably endangered her own physical safety." *Id.* (citing *Kennedy v. McKesson Co.*, 448 N.E.2d 1332, 58 N.Y.2d 500, 504, 462 N.Y.S.2d 421 (N.Y. 1983)).

### b. New York Constitutional Claims

### i. Equal Protection

Equal protection claims are subject to the same analysis under the federal and New York State Constitutions. *See Hayut v. State Univ. of New York*, 352 F.3d 733, 754-755 (2d Cir. 2003). The Equal Protection Clause of the Fourteenth Amendment, which provides that "no State shall ... deny to any person within its jurisdiction the equal protection of the laws" (*see* U.S. Const. amend. XIV, § 1), "requires the government to treat all similarly situated individuals alike." *Young v. Suffolk Cnty.*, 705 F. Supp. 2d 183, 204 (E.D.N.Y.2010) (citing *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439, 105 S. Ct. 3249 (1985)).

When challenging the selective enforcement of a law under the Equal Protection Clause, a plaintiff must prove that (1) compared with others similarly situated, he was selectively treated; and (2) "such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir.2000) (citation omitted).

### ii.    Freedom of Speech

Claims for violations of one's rights to freedom of speech are subject to the same analysis under the federal and New York State Constitutions. *See Menes v. City Univ. of New York Hunter Coll.*, 578 F. Supp. 2d 598, 617, n.16 (S.D.N.Y. 2008).

### D.    Standards Governing Defenses

### 1.    Immunity

### a.    Absolute Prosecutorial Immunity

"It is well-settled that prosecutors performing prosecutorial activities that are 'intimately associated with the judicial phase of the criminal process' are entitled to absolute immunity from an action for damages under § 1983." *Swinton v. City of New York*, 785 F. Supp. 2d 3, 8 (E.D.N.Y. 2011) (quoting *Ying Jing Gan v. City of New York*, 996 F.2d 522, 530 (2d Cir.1993)) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430, 96 S. Ct. 984 (1976))).  The doctrine of absolute prosecutorial immunity applies to shield liability in both federal civil rights and state common law tort actions. *Flagler v. Trainor*, 663 F.3d 543, 546 (2d Cir. 2011).  "Prosecutorial immunity from § 1983 liability is broadly defined, covering 'virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate.'" *Hill v. City of New York*, 45 F.3d 653, 661 (2d Cir. 1995) (quoting *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir.1994)).  However, when a prosecutor "functions

16

outside his or her role as an advocate for the People, the shield of immunity is absent. Immunity does not protect those acts a prosecutor performs in administration or investigation not undertaken in preparation for judicial proceedings." *Hill*, 45 F.3d at 661 (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 270, 113 S. Ct. 2606, 2614 (1993)). Instead, a prosecutor performing administrative or investigatory functions is protected only by qualified immunity. *Id.* (citing *Barbera v. Smith*, 836 F.2d 96, 100 (2d Cir. 1987)).

"In assessing whether absolute immunity should attach to a prosecutor, ... [courts should] ... focus[ ] on the timing of the conduct at issue, drawing a distinction between the investigative and prosecutorial functions, ... and the authority of the individual claiming immunity to make the decision to initiate a prosecution." *DiBlasio v. Novello*, 344 F.3d 292, 300-01 (2d Cir. 2003). For example, a district attorney is absolutely immune from civil liability for initiating a prosecution and presenting the case at trial and for conduct in preparing for those functions, including evaluating and organizing evidence for presentation at trial or to a grand jury or determining which offenses are to be charged. *See Hill*, 45 F.3d at 661 (citations omitted). However, "[a] prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested." *Buckley v. Fitzsimmons*, 509 U.S. 259, 274, 113 S. Ct. 2606, 2616 (1993). Accordingly, where, as in *Buckley*, a plaintiff claimed that the prosecutor conspired to manufacture false evidence that would link the plaintiff to a crime during the time that the prosecutor was working hand in hand with police to investigate the crime, the prosecutor was not entitled to absolute immunity. *See Buckley*, 509 U.S. at 272-274. However, where a prosecutor informs police regarding what charges would or would not be lodged, that function is "so closely related to the prosecutorial decision itself as to warrant absolute immunity." *Swinton*, 785 F. Supp. 2d at 8 (quoting *Ying Jing Gan*, 996 F.2d at 531).

### b. Qualified Immunity

"Once qualified immunity is pleaded, plaintiff's complaint will be dismissed unless defendant's alleged conduct, when committed, violated "clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Williams v. Smith*, 781 F.2d 319, 322 (2d Cir. 1986) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982)).  As a result, a qualified immunity inquiry in a civil rights case generally involves two issues: (1) "whether the facts, viewed in the light most favorable to the plaintiff establish a constitutional violation"; and (2) "whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation confronted."  *Sira v. Morton*, 380 F.3d 57, 68-69 (2d Cir. 2004) [citations omitted], *accord*, *Higazy v. Templeton*, 505 F.3d 161, 169, n.8 (2d Cir. 2007) (citations omitted).

In determining the second issue (i.e., whether it would be clear to a reasonable official that his conduct was unlawful in the situation confronted), courts in this Circuit consider three factors:

> (1) whether the right in question was defined with 'reasonable specificity';
> (2) whether the decisional law of the Supreme Court and the applicable
> circuit court support the existence of the right in question; and (3) whether
> under preexisting law a reasonable defendant official would have
> understood that his or her acts were unlawful.

*Jermosen v. Smith*, 945 F.2d 547, 550 (2d Cir. 1991) (citations omitted), *cert. denied*, 503 U.S. 962 (1992).[5]  "As the third part of the test provides, even where the law is 'clearly established' and the scope of an official's permissible conduct is 'clearly defined,' the qualified immunity defense also protects an official if it was 'objectively reasonable' for him at the time of the challenged action to

---

[5]        *See also Pena v. DePrisco*, 432 F.3d 98, 115 (2d Cir. 2005); *Clue v. Johnson*, 179 F.3d 57, 61 (2d Cir. 1999); *McEvoy v. Spencer,* 124 F.3d 92, 97 (2d Cir. 1997); *Shechter v. Comptroller of City of New York,* 79 F.3d 265, 271 (2d Cir. 1996); *Rodriguez v. Phillips*, 66 F.3d 470, 476 (2d Cir. 1995); *Prue v. City of Syracuse*, 26 F.3d 14, 17-18 (2d Cir. 1994); *Calhoun v. New York State Division of Parole*, 999 F.2d 647, 654 (2d Cir. 1993).

believe his acts were lawful." *Higazy v. Templeton*, 505 F.3d 161, 169-70 (2d Cir. 2007) [citations omitted].[6] This "objective reasonableness" part of the test is met if "officers of reasonable competence could disagree on [the legality of defendant's actions]." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092 (1986).[7] As the Supreme Court has explained,

> [T]he qualified immunity defense . . . provides ample protection to all but the plainly incompetent or those who knowingly violate the law. . . . Defendants will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized.

*Malley*, 475 U.S. at 341.[8]

## III.  ANALYSIS

### A.  Whether Defendants Are Entitled to Summary Judgment on Plaintiff's Free Speech Claims

After carefully considering the matter, the Court answers this question in the affirmative, in part for the reasons stated by Defendants in their respective memoranda of law.  (Dkt No. 22-9, at 6-9 [Def. McNamara's Mem. of Law]; Dkt. No. 23-3, at 4-5 [Def. County's Mem. of Law].)  The Court would add the following points.

---

[6]    *See also Anderson v. Creighton*, 483 U.S. 635, 639, 107 S. Ct. 3034 (1987) ("[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective reasonableness of the action.'") (citation omitted); *Davis v. Scherer*, 468 U.S. 183, 190 (1984) ("Even defendants who violate [clearly established] constitutional rights enjoy a qualified immunity that protects them from liability for damages unless it is further demonstrated that their conduct was unreasonable under the applicable standard."); *Benitez v. Wolff*, 985 F.2d 662, 666 (2d Cir. 1993) (qualified immunity protects defendants "even where the rights were clearly established, if it was objectively reasonable for defendants to believe that their acts did not violate those rights").

[7]    *See also Malsh v. Austin*, 901 F. Supp. 757, 764 (S.D.N.Y. 1995) (citing cases); *Ramirez v. Holmes*, 921 F. Supp. 204, 211 (S.D.N.Y. 1996).

[8]    *See also Hunter v. Bryant,* 502 U.S. 224, 299, 112 S. Ct. 534 (1991) ("The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.") (internal quotation marks and citation omitted).

Plaintiff asserts three free speech claims in his Amended Complaint. First, Plaintiff alleges that Defendants' actions violated his right to freedom of speech under the First Amendment by censoring and chilling Plaintiff's speech. Second, Plaintiff alleges that Defendants violated his First Amendment right to freedom of speech when they retaliated against him for exercising that right. Finally, Plaintiff alleges Defendants violated his right to freedom of speech under the New York State Constitution when they sought to punish Plaintiff for his exercise of that right. No question of fact exists regarding any of these claims, which must be dismissed as a matter of law for the following reasons.

First, Defendant McNamara's actions underlying these claims, i.e., the direction to Helmer to investigate whether the Letter constitutes an aggravated harassment, the direction to Saba to present the results of said investigation to a grand jury, and the post-indictment prosecution of Plaintiff, are prosecutorial in nature and therefore are protected by absolute prosecutorial immunity.

Second, to the extent McNamara's direction to Helmer to investigate whether the Letter constitutes an aggravated harassment may be deemed investigatory in nature, McNamara is entitled to qualified immunity. At the time McNamara gave Helmer that direction, McNamara had complaints from Fiorini and Tourney that they were annoyed and alarmed by the Letter and that the allegations therein were false. Accordingly, it was objectively reasonable for McNamara to believe that investigating the circumstances surrounding the Letter as a possible aggravated harassment would not violate Plaintiff's First Amendment rights.

Third, there is no evidence in the record of McNamara's personal involvement in any actions giving rise to a freedom of speech claim. Instead, the record reflects that McNamara merely directed Helmer to investigate whether the Letter constituted an aggravated harassment and directed Saba to present the results of the investigation to a grand jury. While there is evidence that Helmer and Saba

occasionally gave McNamara informal reports on their progress, there is no evidence that McNamara gave any further direction or guidance regarding the progress of the case until he directed that it be dismissed after Fiorini and Tourney, his complaining witnesses, withdrew support for the prosecution.

Fourth, the evidence reflects that Plaintiff's speech was not chilled as a result of his prosecution for aggravated harassment. At Plaintiff's deposition, he was asked whether the fact that he was prosecuted prevented him from standing up for what he believed in. In response, Plaintiff testified that "[o]f course" he stood up for what he believed in: "It was either that or going down, and I'm not going down." (*See* Dkt. No. 22-7, at 68:9-21 [Dep. of William Hendricks, Nov. 29, 2011].)

Fifth, there is no evidence to suggest that McNamara's decision to direct an investigation into whether the Letter constituted aggravated harassment was motivated by an intent to retaliate against Plaintiff for the content of the Letter.

Sixth, Plaintiff fails to allege, and the evidence does not support, a claim that the County is liable on his Section 1983 claims. In fact, Court notes that Plaintiff has failed to oppose Defendant County's motion for summary judgment in this regard. As indicated above in Point II.B. of this Decision and Order, in this District, when a non-movant fails to oppose a legal argument asserted by a movant in support of a motion, the movant's burden with regard to that argument has been lightened such that, in order to succeed on that argument, the movant need only show that the argument possesses facial merit, which has appropriately been characterized as a "modest" burden. At the very least, the County has met the lightened burden that was created by Plaintiff's failure to respond.

In any event, the Court would reach the same conclusion even if it were to subject the Defendant's argument to the more rigorous scrutiny appropriate for a contested argument. As indicated above in Points II.C.1.a. of this Decision and Order, a municipality such as the County may only be liable on a § 1983 claim "if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Jones*, 691 F.3d at 80 (citing *Monell*, 436 U.S. at 690-91, 98 S. Ct. 2018). Even assuming any County employee violated Plaintiff's constitutional rights, Plaintiff has failed to allege or adduce any evidence that such alleged violation occurred pursuant to a custom or policy of the County.

Seventh, to the extent Plaintiff seeks an injunction ordering the County to reinstate his committee assignments, no such relief is available because the evidence reflects that Plaintiff is no longer a member of the Oneida County Legislature. *See Ya-Chen Chen v. The City Univ. of New York*, No. 11-CV-320, 2011 WL 5419792, at *8-9 (S.D.N.Y. Nov. 9, 2011) (in order to succeed on a § 1983 suit against a State official in his official capacity for prospective relief, a plaintiff must show an ongoing violation of federal law and seeks relief properly characterized as prospective).

For all of these reasons, Defendants' motions for summary judgment on Plaintiff's free speech claim and retaliation claims under the federal and New York State Constitutions are granted.

**B.** **Whether Defendants Are Entitled to Summary Judgment on Plaintiff's Section 1981 and Equal Protection Claims**

After carefully considering the matter, the Court answers this question in the affirmative, in part for the reasons stated by Defendants in their respective memoranda of law. (Dkt No. 22-9, at 1, 6-9 [Def. McNamara's Mem. of Law]; Dkt. No. 23-3, at 4-5 [Def. County's Mem. of Law].) The Court would add the following points.

In his Amended Complaint, Plaintiff asserts claims under the Equal Protection Clause, Section 1981 and the New York State Constitution for violations of his right not to be denied equal protection of the laws based on his race. No question of fact exists regarding either of these claims, which must be dismissed for the following reasons.

First, as indicated in Point II.C.1.b. of this Decision and Order, in order to prevail on a Section 1981 claim, Plaintiff must prove Defendants intended to discriminate against him based on his race. As indicated in Point II.C.2.b.i. of this Decision and Order, in order to prevail on an equal protection claim under either the federal or New York State Constitutions, Plaintiff must prove that he was treated differently by Defendants based on his race. However, the record is devoid of any evidence that McNamara or the County discriminated against Plaintiff based on his race. In fact, Plaintiff testified that his allegations of racial discrimination are based solely on his opinion and belief, and that of his constituents, that he would not have been indicted if not for his race. (*See* Dkt. No. 22-7, at 12, 50-51, 65, 68 [Dep. of William Hendricks, Nov. 29, 2011].) In addition, Plaintiff testified that he does not think McNamara is a racist. (*Id.*, at 66.) Accordingly, there is no question of fact for a jury to decide regarding Plaintiff's allegations of racial discrimination underlying his Section 1981 and equal protection claims.

Second, Plaintiff fails to allege, and the evidence does not support, a claim that the County is liable on his Section 1981 and equal protection claims. In fact, Court notes that Plaintiff has failed to oppose Defendant County's motion for summary judgment. As indicated above in Point II.B. of this Decision and Order, in this District, when a non-movant fails to oppose a legal argument asserted by a movant in support of a motion, the movant's burden with regard to that argument has been lightened such that, in order to succeed on that argument, the movant need only show that the

argument possesses facial merit, which has appropriately been characterized as a "modest" burden. At the very least, the County has met the lightened burden that was created by Plaintiff's failure to respond.

In any event, the Court would reach the same conclusion even if it were to subject the Defendant's argument to the more rigorous scrutiny appropriate for a contested argument. As indicated above in Point II.C.1.b. of this Decision and Order, a municipality such as the County may only be liable on a §1981 claim "if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Jones*, 691 F.3d at 80 (citing *Monell*, 436 U.S. at 690-91, 98 S. Ct. 2018). Even assuming any County employee violated Plaintiff's constitutional rights, Plaintiff has failed to allege or adduce any evidence that such alleged violation occurred pursuant to a custom or policy of the County.

For each of these reasons, Defendants' motions for summary judgment on Plaintiff's Section 1981 and equal protection claims under the federal and New York State Constitutions is granted.

## C. Whether Defendants Are Entitled to Summary Judgment on Plaintiff's Defamation Claims

After carefully considering the matter, the Court answers this question in the affirmative, in part for the reasons stated by Defendants in their respective memoranda of law. (Dkt No. 22-9, at 9-16 [Def. McNamara's Mem. of Law]; Dkt. No. 23-3, at 4-5 [Def. County's Mem. of Law].) The Court would add the following points.

First, to the extent Plaintiff seeks to assert a claim for libel based on McNamara's verbal statements on WIBX, that claim is dismissed because an essential element for such a claim is that the alleged defamatory statement be made in writing. *See Chau v. Lewis*, No. 11-CV-1333, 2013 WL 1296374, at *5 (S.D.N.Y. Mar. 29, 2013) (citing *Celle v. Filipino Reporter Enters.*, 209 F.3d 163, 176 (2d Cir. 2000)).

Second, to the extent Plaintiff seeks to assert a claim for libel based on the contents of the indictment signed by McNamara, that claim is dismissed because the act of signing the indictment is clearly prosecutorial and thus is protected by absolute immunity. *See Tellier v. White*, No. 95-CV-7684, 2000 WL 1290612, at *4 (S.D.N.Y. Sept. 12, 2000) (citing *Doe v. Phillips*, 81 F.3d 1204, 1209 (2d Cir.1996)).

Third, McNamara's statements to the media after the dismissal of Plaintiff's criminal action do not give rise to a slander claim because they are clearly statements of opinion. The full context of McNamara's statement reveals that he was giving his opinion of the legal viability of the criminal action against Plaintiff. For example, while Plaintiff's Amended Complaint alleges that McNamara said, "That letter was done to harass []Fiorini and to annoy []Fiorini and the only way that letter then becomes protected speech is if the people who wrote that letter believed it to be true[,]" but the transcript from the WIBX interview reveals that McNamara actually said, "*I think most people would agree* that letter was done to harass []Fiorini and to annoy []Fiorini and the only way that letter then becomes protected speech is that if the people who wrote it believed it to be true." (*Compare* Dkt. No. 11, at ¶ 57 [Am. Compl.] *with* Dkt. No. 11-5, at 3 [Ex. V to Am. Compl.].) (emphasis added). McNamara also explained his opinion of the facts surrounding the delivery of the Letter: "And *the thing that bothers me most* about this letter [is] if it wasn't done for the purpose of annoying somebody then why did they take it to the media and not take it to the police?" (Dkt. No. 11-5, at 3 [Ex. V to Am. Compl.].) (emphasis added). Finally, McNamara expressed, "Clearly *the way it looks to me*," there was intent to harass Tanoury and Fiorini, but "*I don't think* we can prove that if we went forward especially based on [Tanoury] changing his position." (*Id.*, at 5.) (emphasis added). Because the alleged defamatory statements are statements of opinion, they are privileged.

Finally, even if Plaintiff's defamation claims were not dismissed for the reasons stated above, the Court would decline to exercise supplemental jurisdiction over those claims after it had dismissed all claims over which it had original jurisdiction, pursuant to 28 U.S.C. § 1367(c).

Accordingly, for these reasons, Defendants' motions for summary judgment on Plaintiff's claims for libel and slander are granted.

### D.     Whether Defendants Are Entitled to Summary Judgment on Plaintiff's Intentional Infliction of Emotional Distress Claim

After carefully considering the matter, the Court answers this question in the affirmative, in part for the reasons stated by Defendants in their respective memoranda of law.  (Dkt No. 22-9, at 1, 9-11, 19-20 [Def. McNamara's Mem. of Law]; Dkt. No. 23-3, at 4-5 [Def. County's Mem. of Law].) The Court would add the following points.

First, for the reasons stated in Points III.A. and C. of this Decision and Order, McNamara has absolute immunity from suit regarding his actions related to directing the investigation of the Letter and the signing of the indictment.

Second, McNamara's statements to WIBX do not rise to the level of extreme and outrageous conduct.  As indicated in Point II.C.2.a.iii. of this Decision and Order, only conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society" may be deemed as a matter of law to be so extreme and outrageous to permit recovery.  *Stuto*, 164 F.3d at 827 (citing *Howell*, at 121, 596 N.Y.S.2d 350, 612 N.E.2d 699).  Further, satisfying the outrageousness element is difficult, and federal courts applying New York law regularly dismiss claims for intentional infliction of emotional distress.  *See Baez v. Jetblue Airways Corp.*, No.09–CV–596, 2009 WL 2447990, at *9 (E.D.N.Y. Aug. 3, 2009) (citing *Gerzog v. London Fog Corp.*, 907 F. Supp. 590, 604

(E.D.N.Y.1995) (noting that it is almost exclusively in cases which involve inappropriate sexual conduct, "and more significantly, battery," where courts have retained such claims). Here, the relevant conduct, which constitutes statements of opinion by an elected official speaking to the public to explain actions he took and decisions he made in his official capacity, is not conduct that is "beyond all possible bounds of decency" or "utterly intolerable in a civilized society."

Third, to the extent Plaintiff alleges that the County is liable for McNamara's actions, "the case law is clear that a county in New York cannot be held liable for the prosecutorial acts of a district attorney, because the DA acts in that capacity on behalf of the state, not the county." *See Doe v. Green*, 593 F. Supp. 2d 523, 534 (W.D.N.Y. 2009) (citing *Ying Jing Gan v. City of New York*, 996 F.2d 522, 535-36 (1993); *Baez v. Hennessy*, 853 F.2d 73, 77 (2d Cir.1988), *cert. denied*, 488 U.S. 1014, 109 S. Ct. 805 (1989); *Cox v. County of Suffolk*, 780 F. Supp. 103, 108 (E.D.N.Y.1991). Moreover, the County is not vicariously liable for any acts of McNamara underlying Plaintiff's intentional infliction of emotional distress claim because the law requires an underlying tort by an employee in order to impute liability to the principal or employer. *See Chapin Home for the Aging v. McKimm*, No. 11-CV-667, 2013 WL 948110, at *5 (E.D.N.Y. Mar. 11, 2013) (citing *Wende C. v. United Methodist Church*, 776 N.Y.S.2d 390, 395 (N.Y. App. Div. 2004) ("In the absence of any wrongful or actionable underlying conduct by [the employee], there can be no imposition of vicarious liability against any alleged employer or principal of [the employee] pursuant to the doctrine of respondeat superior."). Because, for the aforementioned reasons, McNamara is not liable to Plaintiff on his claim for intentional infliction of emotional distress, it follows that the County is likewise not liable on that claim.

Fourth, and finally, even if Plaintiff's claim for intentional infliction of emotional distress was not dismissed for the reasons stated above, the Court would decline to exercise supplemental jurisdiction over that claim after it had dismissed all claims over which it had original jurisdiction, pursuant to 28 U.S.C. § 1367(c).

Accordingly, for these reasons, Defendants' motions for summary judgment on Plaintiff's claim for intentional infliction of emotional distress are granted.

### E. Whether Defendants Are Entitled to Summary Judgment on Plaintiff's Negligent Infliction of Emotional Distress Claim

After carefully considering the matter, the Court answers this question in the affirmative, in part for the reasons stated by Defendants in their respective memoranda of law. (Dkt No. 22-9, at 1, 9-11, 19-20 [Def. McNamara's Mem. of Law]; Dkt. No. 23-3, at 4-5 [Def. County's Mem. of Law].) The Court would add the following brief points.

First, as indicated above in Point II.C.2.a.iii. of this Decision and Order, in New York, claims for negligent infliction of emotional distress are not viable where there has been no threat or danger of physical harm to the plaintiff. Here, no danger or threat of physical harm was presented as a result of McNamara's actions underlying Plaintiff's claims. For this reason alone, Plaintiff's negligent infliction of emotional distress claim is dismissed.

Second, for the reasons stated in Point III.D. of this Decision and Order, the County is not liable for the actions of McNamara underlying Plaintiff's claim for negligent infliction of emotional distress.

Third, and finally, even if Plaintiff's claim for negligent infliction of emotional distress was not dismissed for the reasons stated above, the Court would decline to exercise supplemental jurisdiction over that claim after it had dismissed all claims over which it had original jurisdiction, pursuant to 28 U.S.C. § 1367(c).

Accordingly, for these reasons, Defendants' motions for summary judgment on Plaintiff's claim for negligent infliction of emotional distress are granted.

**ACCORDINGLY**, it is

**ORDERED** that the motion for summary judgment by the Scott McNamara (Dkt. No. 22) is **<u>GRANTED</u>**; and it is further

**ORDERED** that the motion for summary judgment by the County of Oneida (Dkt. No. 23) is **<u>GRANTED</u>**; and it is further

**ORDERED** that the Clerk of the Court shall enter judgment in favor of both Defendants and close this case.

Dated: August 13, 2013
      Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge